# In the United States Court of Federal Claims

## No. 11-445C
### (Filed: June 9, 2015) [1]

```
* * * * * * * * * * * * * * * * * * * * * * * * *
                                    *
TEKTEL, INC.,                       *
                                    *
                                    *
        Plaintiff,                  *
                                    *
v.                                  *
                                    *
UNITED STATES,                      *
                                    *
        Defendant.                  *
                                    *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

**Tucker Act, 28 U.S.C. § 1491(a); Contract Dispute; Wunderlich Act, 41 U.S.C §§ 321-22; Savings Clause; Public Contracts Act, Pub. L. No. 111-350 § 7(b); Termination for Convenience Damages.**

Cyrus E. Phillips IV, Albo & Oblon, L.L.P., Courthouse Plaza, 2200 Clarendon Blvd., Suite 1201, Arlington, VA 22201, for Plaintiff.

Joyce R. Branda, Robert E. Kirschman, Jr., Martin F. Hockey, Jr., and Amanda L. Tantum, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, P.O. Box 480, Ben Franklin Station, Washington, D.C. 20044, for Defendant. Brenda Oswalt, Administrative Office of the United States Courts, One Columbus Circle, N.E., Washington, D.C., 20544, Of Counsel.

---

## OPINION AND ORDER

---

**WILLIAMS**, Judge.

This case arises from the termination for convenience of two purchase orders ("Orders") issued to Plaintiff Tektel, Inc. ("Tektel") by the United States District Court for the Northern District of Illinois ("District Court") for the installation of telephone equipment and phone maintenance services. Plaintiff seeks $126,409.15 for expenses incurred as a result of the termination.

---

[1] The Court issued this opinion under seal on May 29, 2015, and directed the parties to file proposed redactions by June 5, 2015.  The parties have not requested any redactions.

The Contract Disputes Act does not apply to District Court contracts, and the parties have invoked the repealed Wunderlich Act, along with its arbitrary and capricious standard of review, and filed cross motions for judgment on the Administrative Record. However, the applicable savings clause does not bring this dispute within the ambit of the Wunderlich Act. As such, it is inappropriate to resolve this action on an Administrative Record, and the parties' cross-motions are denied.

## Background

Around December 2000, Nortel Network Inc.[2] ("Nortel") entered into a Federal Supply Schedule information technology contract with the General Services Administration ("GSA"), contract number GS-35F-0140L ("Prime Contract"). Tektel, Inc. v. United States, 116 Fed. Cl. 612, 615 (2013). The original contract period was from January 1, 2001, until December 31, 2005. Id. The contract was later extended to December 31, 2010. Id. Pursuant to the contract, most services were to be provided by or through Nortel's authorized representatives. Id. These "representatives" were authorized to act on Nortel's behalf for purposes of accepting and fulfilling orders and receiving payment. Id. Under the contract's order placement and remittance clauses, the ordering activities were to direct all Prime Contract orders and payments to Nortel's representatives, also known as "schedule partners" or authorized dealers. Id.

On approximately August 15, 2008, Nortel entered into a "Sponsored GSA Schedule Partner Agreement" ("Partner Agreement") with Tektel. Id. at 617. The agreement authorized Tektel to "'represent Nortel Networks for sales under its [FSS] IT Contract number GS-35F-0140L'" as a "'sponsored partner.'" Id.

## Purchase Orders

In July 2009, the District Court issued its first Request for Quote ("RFQ"). Id. The RFQ sought vendor quotes for a phone maintenance service project. Id. A second RFQ, issued on or around September 8, 2009, was for the purchase and installation of new telephone equipment and a one-year phone maintenance service with three option years. Id.; see also Am. Compl. ¶12; AR 104. Both RFQs stated:

- The maintenance quotation would follow the terms and conditions of the Nortel Networks General Services Schedule Number GS-35F-0140L, Nortel's Prime Contract;
- The District Court would "base the award for this work [on] the lowest price technically acceptable vendor" that met all the requirements in the project description;
- Vendors were to submit pricing under Nortel's Prime Contract Number;
- The District Court could require "local technicians" working on the account to undergo and pass a background investigation, including but not limited to, a comprehensive criminal background and fingerprint check; and

---

[2]     Nortel Network Inc. is now Avaya Government Solutions, Inc. Tektel, Inc. v. United States, 116 Fed.Cl. 612, 615 (2013).

- To submit a quotation on either RFQ, vendors were to complete a "mandatory worksheet" form included with each RFQ and submit the worksheet with their quotation. Each worksheet required vendors to identify whether they were providing their quotation under Nortel's Prime Contract.

Tektel, 116 Fed. Cl. at 617 (alterations in original).

Also included in each RFQ was a section called "Purchase Order Terms and Conditions (Apr 2001)" that incorporated by reference the FAR clauses 52.249-1 and 52.249-4 (regarding termination for the convenience of the Government for supplies and services). Pursuant to FAR 52.249-4, if a contracting officer terminates a contract for the convenience of the Government, the Government is liable for payment for services rendered before the effective date of termination. The RFQs' "Purchase Order Terms and Conditions (Apr 2001)" also included a "Disputes Clause (AOUSC 1999)." Id. at 618.

## Contract Award

Tektel submitted quotes for both the July and September RFQs. Id. On September 30, 2009, the District Court Contracting Officer notified Tektel that it had been awarded "'the Nortel phone switch upgrade work and the yearly maintenance contract as defined in the [RFQ] dated September 8, 2009,'" via a purchase order for the firm fixed price of $135,917.18. Id. The letter further specified that the District Court would issue Tektel a purchase order for the "maintenance/phone hours" project defined in the July RFQ "once the fiscal year beg[an]" because the "phone maintenance/partner hours" were to begin on October 1, 2009, and that the firm fixed price for this order would be $48,857.40. The Contracting Officer "advised Tektel to use [the September 30] letter as a 'notice to proceed' with this work." Id.

## Task Orders

The District Court issued Tektel two "'non-judiciary wide'" "'Delivery/Task Order[s]'" – one dated September 29, 2009, corresponding to the September RFQ, and one dated October 13, 2009, corresponding to the July RFQ. Id. at 619. Tektel's president executed the September Order on September 30, 2009, and the October Order on October 21, 2009. Id. Both Orders included a list of "'Required Provisions and Clauses for All Delivery/Task Orders Placed Against Non-Judiciary Contracts'" that incorporated by reference "'JP3 Clause 7-325, Disputes (Jan 2003).'" Id.[3]

Pursuant to the Orders, Tektel configured what it characterized as custom telephone equipment, software, and software upgrades for the District Court. See Am. Compl. ¶ 2. Tektel also began installing and monitoring the telephone switch. See id. Tektel claims to have performed services between October 1, 2009, and March 19, 2010. See Pl.'s Mot. J. on AR 5. On November 2, 2009, Tektel provided the Clerk of Court ("Clerk") with a price quotation on cables, as well as the labor necessary to install the Court's upgraded telephone switching system

---

[3]     The Disputes Clause is quoted in the Discussion.

equipment.  Pl.'s Reply Mot. Dismiss App. 000028.  Pursuant to this quotation, the Contracting Officer signed a third Purchase Order on November 6, 2009.  <u>Tektel</u>, 116 Fed. Cl. at 619.  Unlike the previously issued Purchase Orders, this Order did not reference the Prime Contract.  The Order instead listed the transaction as an "'open market small purchase'"[4] order.  <u>Id.</u> at 619-20.

## Background Investigation

On March 1, 2010, the Clerk advised Tektel that its suitability to be a contractor for the District Court was being investigated.  In this letter, the Clerk noted that Tektel's President had been convicted of drug-related offenses considered to be a felony charge.  On March 5, 2010, Tektel responded to the Clerk and asserted that its President had never been convicted of a felony offense, only a misdemeanor.  <u>Id.</u> at ¶19.  On March 17, 2010, Tektel provided the Clerk with a case number from the Hardin Circuit Court for the Commonwealth of Kentucky, confirming that Tektel's President had been convicted of a misdemeanor rather than a felony.  <u>Id.</u>; <u>see also</u> AR 898-99.

On March 18, 2010, the Clerk again wrote to Tektel, this time stating:

I previously gave you until March 16, 2010 to provide any documentation necessary to clarify the drug offense issue.  You provided two e-mails informing me that this was not a felony, but you provided no documentation . . . .  I am hereby cancelling the contract for cause, effective at the close of business on Friday March 19, 2010.  Please make the appropriate arrangements . . . regarding the return of any equipment.

Am. Compl. ¶ 20 (alteration in original).

Tektel's President spoke with the Clerk via telephone on March 19, 2010, and complained that the District Court was cancelling Tektel's contract on the basis of a felony conviction that did not exist.  <u>Tektel</u>, 116 Fed. Cl. at 620.  Later that day, before the close of business, Tektel's President emailed the Clerk a copy of the 1991 order amending the felony charge to a misdemeanor.  <u>Id.</u>

## Order Cancellation

On April 15, 2010, the Clerk advised Nortel that the District Court had canceled Tektel's purchase order for cause because of the Court's stringent security requirements for individuals working on the Court's telephone system.  <u>Id.</u> at 621.  Two months later, on June 7, 2010, Avaya Government Solutions, Inc. (Nortel's successor) provided Tektel a 30-day notice of its intention to terminate the Partner Agreement for convenience.  <u>Id.</u>

---

[4]     "Open market items," also referred to as incidental, noncontract, or non-Schedule items, do not appear on the GSA schedule contract.  FAR 8.402(f) provides that for purposes of administrative convenience, a contracting officer is permitted to add open market items to a GSA Schedule Blanket Purchase Agreement or an individual delivery or task order if certain conditions have been met.

By letter dated March 17, 2011, Plaintiff submitted a claim to the District Court's Contracting Officer challenging the District Court's cancellation of the purchase order and requesting a final decision. <u>Id.</u> In this letter, Tektel stated that there was insufficient "'justification to terminate for cause and termination procedures were not properly followed; therefore, the termination was for convenience.'" <u>Id.</u> On July 7, 2011, when the Contracting Officer had not issued a final decision within the requisite 60 days as set forth in the disputes clause of the purchase orders and had not established a date for issuance of a final decision, Tektel filed the instant action, challenging the termination for cause. AR 103.

On November 11, 2013, this Court issued an opinion denying the Government's motion to dismiss and for summary judgment. <u>Tektel</u>, 116 Fed. Cl. at 629. Pursuant to the parties' proposed schedule, on January 6, 2014, the Court ordered a 30-day stay of the matter, during which Plaintiff would submit to the Contracting Officer a new claim with additional documentation. (Order Jan. 6, 2014). In its claim, Tektel submitted a list of its "out of pocket expenses" for equipment, materials, and services that included a description of items with either the Purchase Order or invoice numbers and individual costs, totaling $122,276.38. In this same submission, Tektel included claims for costs totaling $437.52 incurred in moving the Nortel CS1000M SG upgrade equipment from its office to the District Court, as well as a claim for labor costs for the period between September 7, 2009, and March 3, 2010.

On April 4, 2014, the Contracting Officer issued a final decision on Tektel's revised claim, converting the District Court's termination for cause to a termination for convenience. AR 2.[5] Further, the Contracting Officer determined that because Plaintiff had not submitted sufficient reliable evidence of its material and labor costs, Plaintiff was not entitled to any termination for convenience costs. <u>Id.</u> In addition, based on Tektel's bankruptcy filings, the Contracting Officer "concluded that Tektel does not believe that the alleged costs of the equipment . . . result from actions of the district court; rather Tektel asserts that Nortel's actions caused these alleged damages." Def.'s Mot. J. on AR 18 (internal citations and quotations omitted).[6]

---

[5]     Initially, Tektel challenged the termination for cause, arguing that a termination for convenience was appropriate. <u>See Tektel</u>, 116 Fed. Cl. at 615. After the Contracting Officer's April 4, 2014 determination that the termination for cause should be converted to a termination for convenience, Tektel argued that the unilateral terminations of the two purchase orders were "nothing less than diversions of the Court's business," and that the termination for convenience was an effort to avoid breach damages to which Tektel was entitled. Pl.'s Mot. J. on AR 16-17. However, Tektel itself had expressly requested a termination for convenience. <u>Tektel</u>, 116 Fed. Cl. at 615. During the October 17, 2014 status conference, Plaintiff's counsel conceded "since we've asked for termination for convenience, I don't see any way to back out of it." <u>See</u> Status Conference Tr. 7, Oct. 27, 2014.

[6]     On January 25, 2011, Tektel filed for reorganization under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of Kentucky. <u>In re Tektel, Inc.</u>, No. 11-30348 (Bankr. W.D. Ky. Filed Jan. 25, 2011). On April 6, 2012, the bankruptcy court dismissed Tektel's bankruptcy case. <u>Tektel</u>, 116 Fed. Cl. at 621.

On April 24, 2014, the Government filed an Administrative Record, and both parties have filed cross motions for judgment on the Administrative Record.

## Discussion

## Tektel was in Privity with the District Court

In its motion for Judgment on the Administrative Record, the Government attempts to revisit this Court's finding that Tektel was in privity with the United States.  Id. at 10-11.  The Government argues that because the relevant purchase orders were issued against a GSA Schedule Contract, where Tektel was listed as Nortel's authorized agent, Tektel was merely a representative of Nortel and not in privity with the Government.  This Court declines to reconsider its finding that there was privity of contract between Tektel and the District Court.[7] In its November 22, 2013 opinion denying the Government's motion to dismiss and its motion for summary judgment, the Court determined that the course of dealing between Tektel and the District Court, as well as Tektel's course of performance, evinced a contract.  The Court found that the Government's contention that the inclusion of Tektel's name on the Orders was the result of a "scrivener's error" was unsupported by evidence.  See Tektel, 116 Fed. Cl. at 624-25. In its latest motion, styled a motion for judgment on the Administrative Record, Defendant argues that based on the standard of review under the Wunderlich Act, this Court "must uphold factual conclusions of the district court's contracting officer unless they are arbitrary, capricious, or an abuse of discretion," and should "uphold the district court's contracting officer's factual conclusion that Tektel was not the contractor."  Def. Mot. J. on AR 11.  This contention fails.  As explained below, neither the Wunderlich Act nor its standard of review applies, and the Court reviews this contract dispute de novo.

## The Wunderlich Act Does Not Apply, and the Court Reviews the Contracting Officer's Decision De Novo

Given the Contracting Officer's decision to terminate these Purchase Orders for convenience, the sole issue that remains is a determination of Tektel's damages, if any.  Tektel's recovery is limited to termination for convenience damages.  See Parsons Global Servs., Inc. ex rel. Odell Int'l, Inc. v. McHugh, 677 F.3d 1166, 1171 (Fed. Cir. 2012) (citing James M. Ellett Constr. Co. v. United States, 93 F.3d 1537, 1542 (Fed. Cir. 1996)); Jacobs Eng'g Group, Inc. v. United States, 434 F.3d 1378, 1381 (Fed. Cir. 2006) (alteration in original) (internal citation and quotation marks omitted) ("A contractor is not supposed to suffer as the result of a termination for convenience of the Government, nor to underwrite the Government's decision to terminate. If he has actually incurred costs . . . , it is proper that he be reimbursed those costs when the Government terminates for convenience . . . .").  However, termination for convenience damages must be proven and supported by evidence.  See Lisbon Contractors, Inc. v. United States, 828 F.2d 759, 767 (Fed. Cir. 1987) (internal citation and quotation marks omitted) ("[T]he claimant bears the burden of proving the fact of loss with certainty, as well as the burden of proving the amount of loss with sufficient certainty so that the determination of the amount of damages will

---

[7]     A discussion of the Court's determination of privity is found in the Court's Opinion denying the Government's motion to dismiss.  See Tektel, 116 Fed. Cl. at 624-26.

be more than mere speculation."); McDonnell Douglas Corp. v. United States, 37 Fed. Cl. 270, 273 (1996) (internal citation and quotation marks omitted) ("When deciding the proper amount of a termination for convenience cost recovery, the contractor has the burden of establishing, by proof satisfactory to the [terminating contracting officer] the amount proposed."); Corban Indus. v. United States, 24 Cl. Ct. 284, 286 (1991) ("[T]ermination costs must be proved to an acceptable degree of certainty.").

### The Repeal of the Wunderlich Act and the Savings Clause

The Government contends that the repealed Wunderlich Act governs and dictates the standard of review in this dispute.  Specifically, the Government argues that the savings clause in the statute repealing the Wunderlich Act renders the Act applicable here.  Def.'s Supplemental Br. 7-9.

The Wunderlich Act, enacted on May 11, 1954, "precluded contract clauses from preventing judicial review of agency decisions on disputes."  Ralph C. Nash, Jr., Karen R. O'Brien-DeBakey & Steven L. Schooner, THE GOVERNMENT CONTRACTS REFERENCE BOOK 540 (Wolters Kluwer 2013) (1992).  Under the terms of the Act,

> [A] departmental decision on a question of fact rendered pursuant to a disputes clause shall be final and conclusive in accordance with the provisions of the contract unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.

United States v. Carlo Bianchi & Co., 373 U.S. 709, 714 (1963) (internal citation and quotation marks omitted). The Act employed the same standard of review used in the Administrative Procedure Act, establishing that "apart from questions of fraud, determination of the finality to be attached to a departmental decision on a question arising under a disputes clause must rest solely on consideration of the record before the department," and that the standard of review adopted in the Wunderlich Act has consistently been associated with a review limited to the Administrative Record.  Id. at 714-15.

The Wunderlich Act was repealed on January 4, 2011, by the Public Contracts Act, Pub. L. No. 111-350, § 7(b), 124 Stat. 3677, 3859 (2011).  The Public Contracts Act included a savings clause, which provided that the Wunderlich Act would apply to all "rights and duties that matured, penalties that were incurred and proceedings that were begun before [its] repeal." Public Contracts Act § 7(b) (emphasis added).  Tektel's right to seek judicial review of the Contracting Officer's final decision under the Wunderlich Act would not have "matured" until Tektel exhausted administrative remedies required by the contract's Disputes Clause.   The Purchase Orders included a list of "Required Provisions and Clauses for All Delivery/Task Orders Placed Against Non-Judiciary Contracts" and incorporated by reference "JP3 Clause 7-235, Disputes (Jan. 2003)."

This Disputes clause stated in pertinent part:

(a) A contract dispute means a written claim, demand or assertion by a contracting party for the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other specific relief arising under or relating to the contract.

A dispute also includes a termination for convenience settlement proposal and any request for an equitable adjustment which is denied.  A voucher, invoice, or other routine payment that is not disputed by the parties is not a dispute under this clause.

(b) A contract dispute shall be filed within 12 months of its accrual and shall be submitted in writing to the contracting officer.  The dispute shall contain a detailed statement of the legal and factual basis of the dispute and shall be accompanied by any documents that support the claim.  The claimant shall seek specific relief, as provided in paragraph (a) above.  However, the time periods set forth here shall be superseded if the contract contains specific provisions for the processing of any claim which would otherwise be considered a dispute under this clause.

(c) Contracting officers are authorized to decide or settle all disputes under this clause.  If the contracting officer requires additional information the contracting officer shall promptly request the claimant to provide such information.  The contracting officer will issue a written determination within 60 days of the receipt of all requested information from the claimant.  If the contracting officer is unable to render a determination within 60 days, the claimant shall be notified of the date on which a determination will be made.  The determination of the contracting officer shall be considered the final determination of the judiciary.

(d) The contractor shall proceed diligently with performance of this contract pending resolution of the dispute.  The contractor shall comply with the final determination of the contracting officer unless such determination is overturned by a court of competent jurisdiction.  Failure to diligently continue contract performance during the pendency of the claim or failure to comply with the final determination of the contracting officer may result in termination of the contract for default or imposition of other available remedies.

AR 877-78 (emphasis added).

As discussed in Demodulation, Inc., v. United States, "where . . . any other contract with the Government not covered by the Contract Disputes Act of 1978 . . . contains a disputes clause which provides a specific administrative remedy for a dispute, 'the contractor must exhaust its administrative contractual remedies prior to seeking judicial relief.'"  103 Fed. Cl. 794, 806 (2012) (quoting PDR, Inc. v. United States, 78 Fed. Cl. 201, 205-06 (2007)); see also Me. Yankee Atomic Power Co. v. United States, 225 F.3d 1336, 1340 (Fed. Cir. 2000).  Under the governing disputes clause, Tektel was not permitted to challenge the original terminations for cause in a court of competent jurisdiction until after it filed a written claim with the Contracting Officer and received a final decision on that claim, as specified in the clause.  See Demodulation, 103 Fed. Cl. at 806.  Tektel was thus precluded from filing an action in the United States Court of Federal Claims until May 30, 2011 (60 days after the District Court received Tektel's claim and failed to issue a final decision), well after the repeal of the Wunderlich Act on January 4, 2011.

The unavailability of Wunderlich Act review does not mean that Plaintiff is left without a remedy for its contract dispute.  Rather, as the disputes clause incorporated into the Purchase Orders provides, Plaintiff is entitled to challenge the Contracting Officer's determination in "a court of competent jurisdiction."  AR 878.

## Tucker Act Jurisdiction

This contract dispute falls within this Court's Tucker Act jurisdiction, 28 U.S.C. § 1491(a)(1).  The Tucker Act, § 1491(a)(1), provides in pertinent part:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

The Tucker Act provides a waiver of sovereign immunity, enabling a plaintiff to sue the United States for money damages.  United States v. Mitchell, 463 U.S. 206, 212 (1983); Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997) ("To show jurisdiction in the Court of Federal Claims, [a party] must show that either an express or implied-in-fact contract underlies its claim."); Reid v. United States, 95 Fed. Cl. 243, 247 (2010).

Because the Wunderlich Act does not apply, limiting this Court's review to an Administrative Record is not appropriate.  Instead, as is contemplated in Tucker Act contract actions, the Court reviews the Contracting Officer's decision de novo.  Cf. Dot Sys., Inc. v. United States, 231 Ct. Cl. 765, 768 (1982) (holding that the merits of an equitable adjustment/breach of contract claim "must be resolved . . . de novo in the context of a 'pure' breach of contract claim brought directly under [the] Tucker Act"); Cosmo Constr. Co. v. United States, 451 F.2d 602, 615-16 (Ct. Cl. 1971); Woodcrest Constr. Co. v. United States, 408 F.2d 406, 411 (Ct. Cl. 1969).

## Conclusion

The parties' cross motions for Judgment on the Administrative Record are **DENIED**.  The parties may recast these motions as motions for summary judgment and submit appropriate materials consistent with Rule 56(c), or they may proceed to trial on damages.[8]

---

[8]     Among the issues that remain are the following:

- Whether the equipment for which Tektel seeks payment is custom or commercial off the shelf and whether Tektel has properly mitigated any damages allocable to the District Court.
- When claimed labor costs were incurred and whether they are allocable to the contracts.
- Whether Tektel has already been paid for the following:
    - 10/06/2009 Paragon, PO #2735
    - 10/15/2009 Crytycal Management Services – PO #2734
    - 11/17/2009 Combined Communications – Inv #309518
    - 11/17/2009 Personal Communications – Inv #290666 & 29067

The Court will convene a telephonic conference on **June 17, 2015, at 11:00 a.m.** to schedule further proceedings.

<u>s/Mary Ellen Coster Williams</u>
**MARY ELLEN COSTER WILLIAMS**
**Judge**

---

- o   11/17/2009 Labor Costs related to security forms (required for both delivery orders)
- o   12/01/2009 Labor Costs related to trouble ticket called in by US District Court
- o   12/03/2009 Labor Costs related to trouble ticket called in by US District Court
- o   01/25/2010 Combined Communications – PO #2758
- o   02/02/2010 Paragon, PO #2760